The STANFORD DAILY et al.,
Plaintiffs-Appellees,

v.

James ZURCHER, Individually and as Chief of Police of the City of Palo Alto, County of Santa Clara, State of California et al., Defendants-Appellants.

No. 74–3212.

United States Court of Appeals,
Ninth Circuit.

Feb. 2, 1977.

Rehearing and Rehearing En Banc
Denied March 28, 1977.

Sanford Svetcov (argued) San Francisco, Cal., Marilyn Norek Taketa (argued), Palo Alto, Cal., for defendants-appellants.

Jerome B. Falk, Jr. (argued) San Francisco, Cal., for plaintiffs-appellees.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

I

We adopt the opinion of the district court, *Stanford Daily v. Zurcher*, 353 F.Supp. 124 (N.D.Cal.1972).

* Honorable William G. East, Senior District Judge for the District of Oregon, sitting by designation.

## II

We reject appellants' contention that the issuing magistrate is the sole proper party defendant. Having lost in the lower court, the appellants raise this issue for the first time upon appeal. In this respect, the argument is at least, untimely. Moreover, we are not persuaded that it has merit. The appellants are proper defendants in a suit to declare that actions theretofore performed were illegal and to enjoin them from acting illegally or permitting their subordinates from engaging in such illegal conduct in the future.[1] (*Cf. Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir. 1969); *Hernandez v. Noel*, 323 F.Supp. 779, 783 (Conn.1970) ("In a number of recent cases seeking damages against police officers under the Civil Rights Act, it has been held that no liability exists unless it is alleged and proved that the officer was either present at or directed or personally cooperated in the acts relied on for liability. . . Where injunctive relief is sought, however, no such rigid requirements obtain.").)

## III

We also reject appellants' argument that their good faith in securing what turned out to be an invalid warrant insulates them from liability. The appellants rely on the rule that gives public officials a qualified immunity in damage actions under Section 1983 if the officials acted in good faith. Extension of this rule to suits like the present one, seeking injunctive and declaratory relief, has been rejected by the courts. We accept the Fourth Circuit's rationale in *Rowley v. McMillan*, 502 F.2d 1326, 1332 (1974):

". . . [T]he immunity rule, whatever its scope, is grounded upon the inhibitory effect of suits for money damages. Manifestly, actions for injunctive relief do not have that effect. The federal defendants have cited no case, and we have found none, which holds that the immunity doctrine insulates a public official or public employee from injunctive relief to prevent what would otherwise be an illegal act on his part."

(*Accord: Hogge v. Hedrick*, 391 F.Supp. 91 (E.D.Va.1975). *See Wood v. Strickland*, 420 U.S. 308, 315, n.6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *National Treasury Employees Union v. Nixon*, 160 U.S.App.D.C. 321, 492 F.2d 587, 609 (1974); *Gouge v. Joint School Dist. No. 1*, 310 F.Supp. 984, 990 (W.D.Wis. 1970); *Richmond Black Police Officers Ass'n v. City of Richmond*, 386 F.Supp. 151, 154 (E.D.Va.1974); *Saffron v. Wilson*, 70 F.R.D. 51 (D.D.C.1975); *Safeguard Mutual Ins. Co. v. Miller*, 472 F.2d 732, 734 (3d Cir. 1973).)

## IV

The district court awarded attorney's fees to the appellees. It applied the then prevailing law permitting such awards based on the private attorney general doctrine, and pursuant to the court's inherent equitable power. (*E. g., Brandenburger v. Thompson* (9th Cir. 1974) 494 F.2d 885.) While the case was pending on appeal, the Supreme Court decided *Alyeska Pipeline Service Co. v. The Wilderness Society* (1975) 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, which severely restricted the private attorney general doctrine and destroyed the legal foundation for appellees' fee award. While this case was still pending on appeal, Congress passed the Civil Rights Attorney's Fees Awards Act of 1976 (the "Act"), 1976 U.S.Code Cong. & Ad.News, 90 Stat. 2641 (October 19, 1976), which restored pre-*Alyeska* law to "cases arising under our civil rights laws, a category of cases in which attorney's fees have been traditionally regarded as appropriate. It remedies gaps in the language of these civil rights laws by providing the specific authorization

---

1. The threat of future violation in the present case is corroborated by the appellants' own pleadings: "the defendants Bergna, in his official capacity, and other persons in his office . . . will participate in the seeking of a search warrant and in the issuance of the same . . . whenever there is reasonable cause to believe that there exists property or things to be seized which consist of any item or constitute any evidence which tends to show a felony has been committed[.]"

required by the Court in *Alyeska*, and makes our civil rights laws consistent." (Sen.Rep.No.94–1011, 94th Cong., 2d Sess. 4 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912 accompanying S. 2278 (hereinafter "Senate Report").) (*See also id.* at p. 4, 1976 U.S.Code Cong. & Admin.News 5911) ("This decision [*Alyeska*] and dictum created anomalous gaps in our civil rights laws whereby awards of fees are, according to *Alyeska*, suddenly unavailable in the most fundamental civil rights cases. For instance . . . fees are allowed in a suit under Title II of the 1964 Civil Rights Act . . . but not in suits under 42 U.S.C. § 1983 redressing violations of the Federal Constitution . . . ."); 122 Cong.Rec. 12163 (daily ed. October 1, 1976) ("This bill restores to the courts authority which they had exercised for years under the private attorneys general concept." (remarks of Rep. Fish).)

We are not left to speculate whether Congress intended the Act to apply to attorney's fee awards in cases like this one. The Act expressly states that it is applicable to § 1983 actions like the present case.[2] And the legislative history is crystalline on the point. The House Report accompanying the House version of the same bill states:

> "In accordance with applicable decisions of the Supreme Court, the bill is intended to apply to all cases pending on the date of enactment as well as all future cases. *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)." (H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 4, n.6 (1976).)

(*See also* 122 Cong.Rec. 17052 (daily ed. September 29, 1976) ("This application is necessary to fill the gap created by the *Alyeska* decision and thus avoid the inequi-

table situation of an award of attorneys' fees turning on the date the litigation was commenced." (remarks by Sen. Abourezk)); 122 Cong.Rec. 12155 (daily ed. October 1, 1976) ("[I]t would apply to cases now pending, for the simple reason that if that were not the case, the award of fees would depend on the date that the case is filed. I do not think that is the basis on which a determination is made. To that extent, it is retroactive. Pending cases could receive an award of reasonable fees." (remarks of Rep. Anderson)); *id.* at 12160 (remarks of Rep. Drinan).)

As if this were not enough, the Senate Report cited the award in this very case as an example of the fee awards which it approved and which it intended to authorize in the Act. (Senate Report, *supra*, pp. 4, n.3, 6.)

■ Under these circumstances, no useful purpose would be served in requiring a remand to the district court to decide the impact of the Act on the fee awarded to the appellees. The attorney's fee awarded by the district court was valid when it was made, and it was revalidated by the Act.[3] (*Cf. Lytle v. Commissioner of Election* (4th Cir. 1976) 541 F.2d 421.)

AFFIRMED.

---

2. The Act provides that it is applicable to enforce Section 1979 of the Revised Statutes. That section has been codified in 42 U.S.C. § 1983. (*See* H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 4 (1976).)

3. The Senate Report, *supra*, notes that the district court's opinion in this case provides the standards by which fees should be awarded

under the Act. (*See* Senate Report, p. 6 ("It is intended that the amount of fees awarded under S. 2278 be governed by the same standards which prevail in other types of complex Federal litigation . . . . The appropriate standards . . . are correctly applied in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D. Cal.1974) . . . .") 1976 U.S.News 5913.)