**CHICK KAM CHOO, et al.,**
**Plaintiffs-Appellants,**

v.

**EXXON CORPORATION, et al.,**
**Defendants-Appellees.**

No. 82–2015
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1983.

Rehearing and Rehearing En Banc
Denied March 11, 1983.

Benton Musslewhite, Houston, Tex., for plaintiffs-appellants.

James P. Cooney, Houston, Tex., for defendants-appellees.

Before GEE, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

Twelve weeks after summary judgment was entered dismissing their claims, the plaintiffs filed a motion for relief from the final judgment because, allegedly, (a) there was a serious mistake of law that did not come to their counsel's attention until more than thirty days after the final judgment and (b) there was excusable neglect because the legal associate in charge of the litigation for the plaintiffs had left the firm and remaining counsel, embroiled in antitrust litigation in Pennsylvania, did not discover the mistake until some two months after the final judgment. Finding no excusable neglect and, further, that the issues decided by the judgment were thoroughly considered in an adversary context, and that error, if any, was not so fundamentally incorrect as to implicate Rule 60(b) relief, we find no abuse of the district court's discretion in denying such relief and, accordingly, affirm.

*Facts*

These consolidated cases arose out of two fatal accidents aboard the M/S ESSO WIL-HELMSHAVEN which killed three non-American Singapore shipyard workers in March 1977 while the vessel underwent ex-

tensive maintenance and repair work in a Singapore shipyard. Causes of action founded upon the Jones Act, 46 U.S.C. § 688, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., the Death on the High Seas Act, 46 U.S.C. § 761 et seq., general maritime law, and the Wrongful Death and Survival statutes of Texas, Tex.Rev.Civ.Stat. Ann. arts. 4671–4678, and 5525, were brought by the widows and/or children of the decedents against Esso Tankers, Inc. (the Liberian corporation which owns the Liberian registered ESSO WILHELMSHAVEN), Exxon International Company (an unincorporated division of Exxon Corporation charged under a vessel management agreement with responsibility for all aspects of the vessel's day-to-day operations), and Exxon Corporation (a Delaware corporation headquartered in Houston, Texas). Adopting the logic and conclusions of a magistrate's memorandum and report as its own, the district court dismissed the plaintiffs' suit, finding on summary judgment:

(1) that none of the plaintiffs was a Jones Act "seaman", under the test articulated in *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959) and its progeny, entitled to invoke the Jones Act;

(2) that LHWCA could not be invoked as a basis for suit since the Act was restricted to the navigable waters of the United States, and both accidents took place in Singapore;

(3) that DOHSA, "by its title and by its terms" applied only to accidents occurring "on the high seas" and not to deaths that "occurred in territorial waters of Singapore";

(4) that general maritime law of the United States would not be applicable to the case since the accidents lacked adequate "Lauritzen-[Romero-] Rhoditis analysis"[1] contacts; and

(5) that a *forum non conveniens*[2] dismissal was appropriate since Singapore's would be the controlling law, Singapore was the site of the accident, was the residence of most of the plaintiffs and witnesses, and could provide an adequate forum. The magistrate further concluded that Exxon could not assert its contractual indemnity rights against the Singapore shipyard in a United States action, presumably because of a lack of personal jurisdiction over the shipyard.

Judgment was entered on July 31, 1980 against the plaintiffs, and their action was dismissed. No timely appeal was taken. This was allegedly caused, at least in part, by miscommunications that arose between the two law firms representing the plaintiffs (subsequent to consolidation and following the departure from her firm and withdrawal from the case of the associate initially in charge), which caused them to erroneously evaluate the strength of their case on appeal. Approximately twelve weeks later, after reevaluating their position, counsel for the plaintiffs sought reconsideration, pursuant to Fed.R.Civ.Pro. 60(b), by the district court of its July 31, 1980 order of dismissal. After a hearing, relief was refused, and this appeal followed.

## I

However persuasive the plaintiffs' assertions of legal error might have been on a direct appeal, timely taken, our review of the plaintiffs' appeal in its present procedural posture is strictly limited to determining whether the district court's denial of the Rule 60(b) motion constituted an abuse of discretion. *Alvestad v. Monsanto Co.*, 671 F.2d 908, 912 (5th Cir.1982); *Seven Elves v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981). As we have stressed before, a

---

**1.** See *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 769 (1959); and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Discussed in *Fisher v. Agios Nicholaos V*, 628 F.2d 308 (5th Cir.1980) and *Chiazor v. Transworld*

*Drilling, Inc.*, 648 F.2d 1015 (5th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136.

**2.** See *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and *Fisher* and *Chiazor, supra*, note 1.

Rule 60(b) appeal may not be used as a substitute for the ordinary process of appeal once the time for such has passed, particularly where, as here, mistakes of law are alleged as the primary grounds for the appeal.

Rule 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

With regard to the "excusable neglect" contention, a leading commentator has pointed out:

[A] party cannot have relief under Rule 60(b)(1) merely because he is unhappy with the judgment. Instead he must make some showing of why he was justified in failing to avoid mistake or inadvertence. Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law....

11 Wright and Miller, Federal Practice and Procedure, § 2858 at p. 170.

With regard to the "mistake" in the ruling as a ground for 60(b) relief, the same commentator quotes with approval jurisprudential and doctrinal commentary that the remedy is " 'addressed to special situations justifying extraordinary relief, [where] ... the mistake was attributable to special circumstances' ", not simply " 'that the court made an erroneous ruling' ", *id.* at p. 177, and that the judicial error should involve " 'a fundamental misconception of the law' " as distinguished merely from a merely erroneous ruling, *id.* at p. 178.

In the present instance, the attorney inaction and the reasons relied upon are far from the type of excusable neglect previously recognized as a basis for reopening a final judgment. As to the "mistake", the rulings on (3) and (4), for instance, present issues that arguably could have been decided otherwise on appeal, but they do not present rulings so obviously incorrect as to constitute a fundamentally misconceived ruling such as, for instance, one that overlooks controlling statute or case law. Even if it were within the district court's discretion to reopen its judgment on the basis of these errors of law alleged by the plaintiffs, if errors they were, we cannot conclude in the present context that the court's failure to do so was an abuse of its discretion.

In *Alvestad, supra,* the widow of a Norwegian diver, killed in the North Sea while working under a contract between his employer and a United Kingdom corporate subsidiary of an American corporation, similarly opposed a *forum non conveniens* dismissal of her action in the context of a Rule 60(b) appeal. She urged, as do the plaintiffs here, that the application of choice-of-law and *forum non conveniens* analysis by the district court was erroneous "clear[ly] and beyond question". *Alvestad, supra,* 671 F.2d at 913. Rejecting Rule 60(b) appeals as a suitable means for challenging alleged errors of law of this substantive nature, we stated, summarizing prior authority:

Without reaching the merits of these contentions, we do not regard Rule 60(b) as an appropriate avenue for relief from judicial mistakes of this kind. The Fourth Circuit in *Compton* [*v. Alton Steamship Co.* 608 F.2d 96 (4th Cir.1979)] undeniably construed Rule 60(b) as providing for relief from legal errors committed by a trial court. However, it re-

ferred only to situations in which "the mistake was clear on the record, and involved a plain misconstruction of the statute on which the action was grounded...." 608 F.2d at 104. Our own decision in *Meadows v. Cohen,* 409 F.2d 750 (5th Cir.1969), quoted extensively in *Compton,* held a district court to have abused its discretion in not granting a Rule 60(b) motion for relief from a judgment "which was clearly at variance with the plain wording" of a federal statute. *Id.* at 753.

While we thus have admonished district courts that they should honor requests to reform a judgment in obvious conflict with a clear statutory mandate, we have been equally insistent that Rule 60(b) is not a substitute for the ordinary method of redressing judicial error—appeal. In its origins, Rule 60(b) "represents an effort to codify the equitable practice with respect to the correction of judgments after the time for appeal has expired." *Lafferty v. District of Columbia,* 277 F.2d 348, 351 n. 6 (D.C.Cir.1960). It is not a means for postponing or escaping that expiration.

In *Gary W. v. Louisiana,* 622 F.2d 804 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981), appellants who had neglected to appeal an award of attorneys' fees against them sought relief from the judgment through a Rule 60(b) motion. On appeal from the district court's denial of their motion, appellants maintained that this denial was an abuse of discretion because the court had committed the "mistake" of applying the wrong legal standard. "[E]ven if the trial court had misapplied an incorrect legal standard when assessing legal fees," we observed in affirming the denial, "the proper way to challenge its ruling in the court of appeals is by appeal of its ruling, not by appeal of a denial of a Rule 60(b) motion." 622 F.2d at 805 (footnote omitted).

Similarly, in *Fackelman v. Bell,* 564 F.2d 734 (5th Cir.1977), this court rebuffed an appellant's effort, to use Rule 60(b) to reopen an adverse judgment on the ground that the district court had erroneously interpreted the Freedom of Information Act:

> All of these mistakes, if mistakes they be, are mistakes of law and could have been raised on appeal. The law of this Circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law.... But such reopenings are certainly not mandatory. The orderly process of appeal usually is far more appropriate to deal with such errors.

564 F.2d at 736.

*Alvestad, supra,* 671 F.2d at 912–913.

Unlike *Seven Elves, supra,* upon which the plaintiffs primarily rely, the disposition of the present case was not rendered in an effectively *ex parte* context. The arguments in favor and opposition to the exercise of jurisdiction over the plaintiffs' actions were here thoroughly aired below, before the magistrate, in a subsequent oral argument before the district court, and finally in the Rule 60(b) motion and hearing. While the merits of the underlying claim may have not been reached and tried, the merits of the defendants' jurisdictional defenses have been thoroughly considered in an adversarial context. Whether we would have reached the conclusion reached by the district court we need not consider. It will suffice to say that if it was wrong, it was not obviously so in a manner now remediable in a Rule 60(b) appeal.

While an attorney's blatant errors will not necessarily be permitted to visit manifest injustice on his innocent client, the alleged attorney errors here are not blatant and the alleged injustice is far from self-evident. In contrast to *Seven Elves* (where a binding $250,000 final judgment was entered against the defendants without their receiving any effective prior notice of the proceeding scheduled to adjudicate the claims against them, and without any appearance by the defendants themselves or counsel on their behalf from the time pleadings were first filed until an attempt was made to execute the judgment), the plaintiffs here have been vigorously represented

by counsel, especially on the jurisdictional issue they unsuccessfully opposed, throughout the course of these proceedings. The fact that counsel might have been more inclined to take a timely appeal after a more thoughtful or more thorough review of case files and case law he failed to consult sooner, does not constitute the sort of "excusable neglect" previously recognized as a basis for Rule 60(b) relief. Here, at most, the attorney's failure to appeal was a result of misjudgment or careless failure to evaluate the possibilities of an arguable appeal, rather than the type of malfeasance by an attorney that results in such dire consequences for his client that justice requires the courts to step in and correct the situation.

Similarly, even if, as the plaintiffs contend with regard to the *forum non conveniens* issue, the workmens' compensation scheme of Singapore presents Singapore's injured harborworker with a hobson's choice between an arguably inadequate (but prompt and certain) compensation award and the uncertainty and delay of an action at tort, it seems in this regard to do no more, no more unjustly, than any workmen's compensation system. We cannot, on this basis alone, conclude that relegating the plaintiffs to their home jurisdiction to pursue such remedies as are there available to them (upon the express condition that the defendant will satisfy any judgment which may there result), is facially unjust and cognizable in the context of a Rule 60(b) appeal. If the compensation available to Singapore's injured shipyard workers is inadequate, it is a matter more for the considered judgment of the legislators of Singapore than for this appellate court.

Accordingly, the judgment below is AFFIRMED.

AFFIRMED.