USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ________ No. 92-1832 BOSTON AND MAINE CORPORATION, BOSTON AND MAINE CORPORATION, Plaintiff, Appellant, v. TOWN OF HAMPTON, TOWN OF HAMPTON, Defendant, Appellee. BEFORE BEFORE Torruella and Cyr, Circuit Judges, ______________ and Keeton,* District Judge. ______________ ________ ORDER OF COURT ORDER OF COURT Entered October 19, 1993 Entered October 19, 1993 On March 5, 1993, this court entered judgment affirming the judgment of the United States District Court for the District of New Hampshire. An Order denying appellant's petition for rehearing was entered on April 9, 1993. On or about October 1, 1993, the Clerk of this court received from Appellant Boston and Maine Corporation ("B & M") a Motion to Enlarge Time in Which to File a Renewed Petition for Rehearing, a Petition for Rehearing, and a Motion to Recall Mandate. The Clerk received from Appellee Town of Hampton ("Hampton"), on or about October 7, 1993, its Objection to Motion to Enlarge Time, and on or about October 12, 1993, received its revised Objection to Motion to Recall Mandate. * Of the District of Massachusetts, sitting by designation. * Of the District of Massachusetts, sitting by designation. Calling attention to the Opinion of the Supreme Court of New Hampshire in Schoff v. City of Somersworth, handed down ______ ____________________ August 31, 1993 (explicitly declaring erroneous two parts of this court's assessment of the substantive law of New Hampshire regarding municipal liability), B & M moves that this court recall its mandate and enlarge the time for a petition for rehearing. Citing Braniff Airways, Inc. v. Curtiss-Wright Corp., _____________________ ____________________ 424 F.2d 427 (2d Cir.), cert. denied, 400 U.S. 801 (1970), B & M ____________ asserts that, under Fed. R. App. P. 26(b) and 40, this court "has the power to accept a petition for rehearing which is filed beyond the stated 14 day time limit for filing of such pleadings." B & M's Motion to Enlarge Time, p. 4. Although Rule 40 does grant the appellate courts authority to extend the time for filing a petition for rehearing, a court can do so only while it has jurisdiction over the case. We lack jurisdiction here. The mandate issued in this case on April 20, 1993, and "[i]ssuance of the mandate formally marks the end of appellate jurisdiction." Johnson v. Bechtel Associates _______ __________________ Professional Corp., 801 F.2d 412, 415 (D.C. Cir. 1986). __________________ Braniff Airways, the sole support cited by B & M for ________________ its proposed enlargement of time, is not to the contrary. In Braniff Airways, the Second Circuit determined that the case ________________ before it was still "sub judice." Braniff Airways, 424 F.2d at _______________ 429. The court then based its decision in part on Huddleston v. __________ Dwyer, 322 U.S. 232 (1944), in which the Supreme Court "indicated _____ that so long as the case was 'sub judice' the court of appeals should have entertained the petition for rehearing based on a change in state law" after its decision. Braniff Airways, 424 _______________ F.2d at 429. Mandate having issued in the case before us, however, it is no longer sub judice and we lack authority to consider a petition for rehearing. Other circuits have similarly declined to consider a petition for rehearing when no part of the case remained sub judice. See, e.g., Johnson, 801 F.2d at 415 (D.C. Cir. 1986) ___ ____ _______ (court did not have jurisdiction over petition for rehearing after mandate had been issued); Iverson v. Commissioner of _______ ________________ Internal Revenue, 257 F.d 408, 409 (3d. Cir. 1958) ("With the ________________ mandates on the judgments here involved outstanding, it is doubtful whether this court would have jurisdiction to consider a petition for rehearing."). Precedents suggest, however, that even after the judgment of a court of appeals has become final and the court no longer has jurisdiction to consider a subsequently filed petition for rehearing, the court may reestablish jurisdiction by recalling its mandate (either on motion or on its own initiative). See Johnson, 801 F.2d at 416; Greater Boston ___ _______ _______________ Television Corp. v. FCC, 463 F.2d 268 (D.C. Cir. 1971); see also _________________ ___ ___ ____ Powers v. Bethlehem Steel Corp., 483 F.2d 963 (1st Cir. 1973). ______ _____________________ 2 B & M has moved for a recall of mandate in this case. We are troubled by the "intricate maze of relationships," Goncalves v. INS, Nos. 92-1122 and 92-2272, slip _________ ___ op. at 15 (1st Cir. Sept. 28, 1993), that would be created, were we to assert this suggested "inherent authority" to recall a mandate. What, for example, would be the effect on jurisdiction in the district court, after a mandate is recalled and then reissued? And what reasoned explanation would justify the divergence between fixed time limits on the district court's ability to amend a judgment under Fed. R. Civ. P. 60 and the absence of like time limits on the suggested inherent authority of the appellate courts to recall a mandate, even if acting on precisely the same grounds? Would vesting such exceptional power solely in courts of appeal create an area of essentially original, rather than appellate, jurisdiction in courts of appeal over closed cases? Another troubling thought about this procedural maze is that the precedents for recalling a mandate may have been rooted in practices developed before adoption of the Federal Rules (of Civil Procedure and Appellate Procedure), and at a time when a court retained jurisdiction over cases decided in a term of court until that term ended. To continue this practice of recalling a mandate now, when an appellate court's "term" has less significance, risks extending indefinitely the authority of the court over closed cases. Neither the courts nor the parties who rely upon the finality of their judgments would welcome such an extension. We conclude, however, that we need not resolve these concerns to decide this case. Instead, we assume in B & M's favor, without so deciding, that a court of appeals may reassert jurisdiction over a case by recalling its mandate, and, after jurisdiction is thus reestablished, may consider an otherwise untimely petition for rehearing. See Johnson, 801 F.2d at 416; ___ _______ Greater Boston Television Corp., 463 F.2d at 275-80. Even if ________________________________ this authority to recall a mandate still exists, it "should be exercised sparingly, and only upon a showing of exceptional circumstances." Dilley v. Alexander, 627 F.2d 407, 411 (D.C. ______ _________ Cir. 1980) (internal citations omitted); see also Powers, 483 ___ ____ ______ F.2d at 964. Resort to recall power is an "extraordinary step," and "should not be used simply as a device for granting late rehearing." Johnson, 801 F.2d at 416. _______ In denying a motion to recall mandate in a previous case (before the Federal Rules of Appellate Procedure were adopted), this court emphasized the need to bring an orderly end to litigation: If we were in error [in this case], of which we are not presently persuaded, we believe it 3 would be far greater error to permit reconsideration now after denial of petitions for rehearing and certiorari. There must be an end to dispute. If a situation arose, such as a subsequent decision by the Supreme Court, which showed that our original judgment was demonstrably wrong, a motion to recall mandate might be entertained. The present case is far from that. Legate v. Maloney, 348 F.2d 164, 166 (1st Cir. 1965). ______ _______ This earlier declaration retains its full force today. The judgment in the case before us is not demonstrably wrong. Indeed, as Hampton correctly argues, the precise issues of substantive law presented by this case were not before the Supreme Court of New Hampshire in either of the two recent cases brought to our attention by B & M. Thus, although the Supreme Court of New Hampshire has explicitly declared parts of our reasoning in this case erroneous, we would only compound our _________ error by reopening a dispute in which our judgment was not ________ demonstrably wrong. Moreover, as Hampton observes, all parties were aware that the Schoff case was pending when this case was filed, and ______ plaintiff was free to file this action in state court..., to seek to certify the question presented in this case to the New Hampshire Supreme Court while this case remained open, to move to have this court stay consideration of this matter until the New Hampshire Supreme Court decided Schoff, or to seek a ______ writ of certiorari to the United States Supreme Court following this Court's March 5, 1993 decision. Instead, the plaintiff chose not to pursue these alternatives and no manifest injustice would result in requiring the plaintiff to be bound by the ruling of the forum it did select. Hampton's (revised) Objection to Motion to Enlarge Time, p. 7. In these circumstances, we conclude that it would be not only unwarranted but unjust to recall the mandate in this case. Appellant's motion to enlarge time to file a renewed petition for rehearing and appellant's motion to recall mandate are denied. 4